SCHULTE et al. v. COLORADO TIRE & LEATHER CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 13, 1919.)

No. 5028.

1. PATENTS ☞168(2)—INFRINGEMENT—LIMITATION OF CLAIM BY AMENDMENT.
   Where, after rejection of a claim for anticipation, it is amended by adding a limiting feature and then allowed, the added feature becomes an essential element, and a structure from which it is omitted does not infringe.

2. PATENTS ☞129—SUIT FOR INFRINGEMENT—ESTOPPEL.
   That a defendant made infringing articles in the belief that it had a valid license, which was in fact void, and under which it now makes no claim, does not estop it from denying the validity of the patent.

3. PATENTS ☞328—VALIDITY—LEATHER BELTING.
   The Sturges patent, No. 965,250, for sectional leather belting, held void for lack of utility.

4. TRADE-MARKS AND TRADE-NAMES ☞93(3)—UNFAIR COMPETITION—ADVERTISING LITERATURE.
   Evidence held insufficient to establish such similarity between the advertising literature of defendant and complainant as to amount to unfair competition.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit by Joseph H. Schulte and Henry Kaiser, doing business as the Detroit Leather Works, against the Colorado Tire & Leather Company and others. Decree for defendants, and complainants appeal. Affirmed.

C. R. Stickney (Otto F. Barthel and Barthel, Flanders & Barthel, all of Detroit, Mich., on the brief), for appellants.

A. J. O'Brien, of Denver, Colo., for appellees.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. Appeal from dismissal of bill for infringement of letters patent No. 965,250, issued to Varney K. Sturges, assignor to Joseph H. Schulte and Henry Kaiser, and for unfair competition by the use of advertising matter alleged to contain cuts and descriptive matter unfairly and deceptively similar to that put out by appellants.

The patent was for an improvement in sectional leather belting for grooved pulley use. The essential elements of the three claims of the patent are included in claim 3, which is as follows:

"Belting comprising a series of flexible longitudinally tapered elements whose wider ends form the outer face of the belt and whose inner tapered ends are beveled to form a continuous inner belt face, and rivets each securing the broad end of one element to the bodies of two adjacent elements, each element being secured to adjacent elements by a pair of rivets, and the free inner end of each element overlapping the head of the adjacent rivet."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The breadth of these claims is very much limited by the action of the Patent Office and the patentee in connection with the granting of this patent, as shown by the file wrapper which was in evidence. That file shows that as originally applied for the patent consisted of four claims. Upon examination the entire application was rejected by the examiner on the ground of anticipation by letters patent No. 378,686 to Hunt, and two English patents, No. 11,432 to Hallas, and No. 20,869 to Wiechmann. Thereupon the applicant amended by canceling his first claim and by renumbering and making certain changes in the other three claims. In the old claim 4 (now 3) there was a cancellation of the word "rounded" as descriptive of the wide or broad end of the leather elements. That change was of no consequence and could not have affected the allowance of the patent. The essential changes made by the amendments were by the addition to each of the old claims 2, 3, and 4 (now 1, 2, and 3) of the following: To the end of old claim 2 (now 1), "the free inner end of each strip overlapping the head of the adjacent rivet;" to the end of old claim 3 (now 2), "and being adapted to overlap the heads of the adjacent rivets;" to the end of old claim 4 (now 3), "and the free inner end of each element overlapping the head of the adjacent rivet." It is clear that the sole difference between the rejected belt and that allowed is that in the latter the inner rivet heads are covered by the small free end of the leather elements. By the acceptance of the action of the examiner upon the cited interferences and the later amendment which passed to allowance, the patent is limited by the citation so that it covers only the feature embodied in the amendment; that is, the covering of the inner rivet heads by the overlapping tip or end of the leather elements. Drum v. Turner, 219 Fed. 188, 191, 135 C. C. A. 74.

For a few months, appellees employed this feature in their belts under the honest impression that they were licensees. Later, upon ascertaining their mistake, they adopted a belt substantially like appellants', with the vital difference that the free inner end of each strip or element was cut off abruptly, so that it did not overlap the inner rivet head. This change abandoned the only feature protected by appellants' patent. It is said that, under extreme compression of appellees' form of belt over small pulley wheels, the inner free end of the leather element would partially cover the rivet head. It is evident that the sole object of the change in form of the belt was to avoid this result, and that such avoidance is successful except partially in exceptional instances. There is no infringement.

[2] During the period before appellees changed their belt by clipping off the leather tips which overlapped the inner ends of the rivets they were making a belt which clearly infringed appellants' patent. The circumstance that they honestly believed themselves to be licensees under that patent does not prevent such action from being infringement, where, as here, it is clear that the license was void. Therefore the appellants would be entitled to compensation for such infringement unless, as claimed by appellees, the patent was invalid. Appellees contend that this patent is anticipated in all respects other

than the covering of the inner rivet heads by English letters patent No. 25,145 to Berisford, and that this excepted feature is not patentable because it fills no useful function. Appellants' answer to this is that, having claimed to act as licensees under the patent during this period of the infringement, appellees are estopped to deny the validity of the patent. The license here was issued to appellees by the patentee after he had assigned all rights to appellants. The position of appellants is, therefore, that they can recover because the license was worthless for infringement of a patent which cannot be attacked by appellees because they honestly acted under that worthless license. There was never any license here. Appellees are not claiming any rights or protection under what they once supposed was a license. The rule invoked by appellants has no application to this situation.

[3] In our judgment, the patents cited by the examiner and the Berisford patent pleaded in the answer would anticipate all of the features of this patent except covering the inner rivet heads, even if the proceedings in the Patent Office did not estop appellants from claiming more than that feature. Appellees contend that this feature is not patentable because entirely lacking in utility. The patent here related to a belt for use upon a particular kind of pulley—one of grooved shape. The evidence is clear that the belt contact upon such a pulley must be at the sides of the pulley, and that to permit the belt to touch the bottom of the groove would necessarily weaken this contact, and therefore the operation of the belt. In short, the inner or bottom edge of the belt must be kept away from contact, so that the grip upon the sides may be undiminished. As the inner heads of the rivets are along the inner or bottom edge of the belt, and the belt passes over only the grooved wheels, it is clear that nothing touches these rivet heads, and therefore they need no protection. Covering the inner rivet heads could have no effect upon the operation of the belt or the protection of the rivet heads which run, untouched. There is no useful function whatsoever performed by extending the free inner ends of the tips to cover the rivet heads. No economy in manufacture is shown, and no practical reason why such construction should be preferable to the buying public. This is not urged as a design patent, and was not intended as such by the patentee. The patent is invalid because lacking utility.

[4] As to unfair competition, the testimony showed that both parties used certain circulars and advertising matter. In some ways the illustrations were alike, being a partially unwound spool of belting, a cross-section of the belt on a grooved pulley, side and top views of a piece of belting, and a continuous belt with or without an inclosed legend. None of these illustrations suggested any particular brand or make of that character of belting, except in two instances, one of which inclosed a legend that arose from the wording of the inclosure. In the appellants' that wording was, "Detroit Leather Works— Flexo Laminated Belt—Detroit, Mich.," while in the appellees' that wording was, "Durable 'V' Shaped Belts," with the word "patented" in the literature put out during the supposed license period. In other parts of appellants' advertising they designated the belting as "Flexo

Laminated 'V' Shaped Belts." The other instance was in the sectional view of the belt, which showed the inner rivet head covered in the appellants' literature, and the same in appellees' literature during the supposed license period, and in a single advertisement in a trade journal shortly after this period, which advertisement had been arranged for during that period.

When appellees discovered that the license under which they were making and selling these belts was worthless, they ceased to overlap the inner rivet heads, and so showed in their sales literature and advertisements. As the patent on this feature was invalid, appellees were not required to do this, and might have continued to put out and advertise the same kind of belts as made by appellants under their supposed patent, so long as they made no attempt to deceive the public into believing they were selling the product of appellants. But this circumstance is valuable, as showing that appellees distinguished their belt from that made by appellants. There is no such similarity in advertising or sales literature as would at any time have deceived, nor was there apparently any intention to deceive, the purchasing public into the belief that appellees were dealing in a belt made by appellants, so that the public would suppose, when they were buying from appellees, that they were getting a belt from appellants' factories.

The trial court found no unfair competition, and there is not only substantial evidence to sustain that finding, but there is no substantial evidence to the contrary.

The decree should be affirmed.